**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JG LAW, PLLC,

      *Plaintiff*,

    v.

DEPARTMENT OF STATE et al.,

      *Defendants*.

Civil Action No. 22-2320 (TJK)

## <u>MEMORANDUM OPINION</u>

JG Law, PLLC sought records about its client from the Department of State and U.S. Citizenship and Immigration Services under the Freedom of Information Act.  In response, the two agencies released eight pages of records, but withheld one in part under Exemption 7(E) and 22 in full under Exemption 3.  Unsatisfied, JG Law sued, and the parties now cross-move for summary judgment.  For the reasons explained below, the Court will grant the agencies' motion, deny JG Law's, and enter judgment for the agencies.

## I.    Background

In December 2021, JG Law filed a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") with U.S. Citizenship and Immigration Services ("USCIS") for all records about its client, Emil Mahfuz Hawitt Medrano.[1]  ECF No. 55-2 ¶ 8.  The request appears to have been intended to capture records related to the adjudication of Hawitt's visa applications, including the revocation of his B1/B2 tourist visa in October 2001.  ECF No. 56 at 2.  Hawitt alleges that the

---

[1] JG Law may have sent another FOIA request to the Department of State as well.  *See* ECF No. 47 ¶ 14; ECF No. 56-1 at 2.  Defendants deny receiving it.  ECF No. 48 ¶ 14.  But because the parties agree that all the records at issue would have been located within USCIS, whether this other request was submitted is "[i]mmaterial," ECF No. 59-1, and the Court need not resolve it.

U.S. Consul General in Honduras later explained that the reason for the revocation was due to "source" information indicating his involvement with "controlled substance traffickers" and "money laundering." *Id.* (citing ECF No. 56-3 at 2). USCIS released eight pages of records but withheld one in part and another 22 in full. ECF No. 55-2 ¶ 12. JG Law administratively appealed, and USCIS affirmed. ECF No. 55-2 at 30.

In August 2022, JG Law sued the Department of State and Customs and Border Protection ("CPB"). *See* ECF No. 44 at 5. Later, the Court granted leave for JG Law to release its claims against CPB and substitute USCIS in its place. ECF No. 44 at 5. After narrowing the scope of their dispute, the Department of State and USCIS ("Defendants") and JG Law cross-moved for summary judgment. ECF Nos. 55, 56, 58, 60. Defendants argue that they properly withheld material under Exemptions 7(E) and 3 and that they produced all reasonably segregable portions of the responsive records. *See* ECF Nos. 55, 58. Rather than directly challenge the propriety of Defendants' withholdings, JG Law instead mostly challenges the scope of Defendants' search, and argue that they have not turned over "derogatory investigative reports" that played a role in Hawitt's visa revocation. ECF No. 56 at 3–5. JG Law also argues that Defendants failed to produce all reasonably segregable portions of the relevant records. ECF No. 56 at 5.

## II.    Legal Standard

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Am. Immigr. Council v. DHS*, 30 F. Supp. 3d 67, 72 (D.D.C. 2014) (citations omitted). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016) (citation omitted). At all times, the responding federal agency bears the burden of proving that it has complied with its statutory obligations under FOIA. *See U.S. Dep't*

2

*of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989).  When an agency with-holds responsive documents pursuant to a FOIA exemption, a court may grant summary judgment based on the agency's declarations if the "affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith."  *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011).

### III.    Analysis

For the most part, the parties cross-motions are ships passing in the night.  JG Law primar-ily challenges the adequacy of Defendants' search; Defendants seeks to justify its withholdings under FOIA Exemptions 7(E) and 3.  Because JG Law waived any challenge to the adequacy of Defendants' search, and Defendants have met their burden with respect to their withholdings and segregability, Defendants are entitled to summary judgment.

### A.    JG Law Waived Any Challenge to the Adequacy of Defendants' Search

JG Law challenges the adequacy of Defendants' search, arguing that it did not produce the "underlying derogatory reports" allegedly relied on by the Consul General in revoking Hawitt's visa in 2001.  ECF No. 56 at 3.  JG Law argues that USCIS must have relied on those reports when it revoked his visa, making them—if they exist—responsive to his FOIA request, which sought "[a]ll records related to [Hawitt], whether individually or jointly . . . without exception."  ECF No. 55-2 at 10.  Since these reports were not produced or identified in the *Vaughn* index, JG Law argues the Department's search was inadequate.  ECF No. 56 at 2.

JG Law's argument is flawed from the start, because "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."  *Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994).  But its more fundamental problem is that it has waived its right to challenge Defendants' search.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 n.1 (2017) (citation modified). A plaintiff may waive its rights under FOIA. *See Price v. U.S. DOJ Att'y Off.*, 865 F.3d 676, 679–81 (D.C. Cir. 2017). And the right to challenge an agency's search is no exception. Indeed, "waiving the right to challenge the sufficiency of an agency's FOIA search . . . typically happens in joint status reports." *Project on Gov't Oversight, Inc. v. DHS*, 657 F. Supp. 3d 50, 59 (D.D.C. 2023). Moreover, status reports aside, "the common law concept of waiver . . . includes inferences from the words and actions of the parties." *Id.* (quoting *Cayuga Nation v. U.S. Dep't of Interior*, No. 20-cv-2642 (ABJ), 2022 WL 888178, at *4 (D.D.C. Mar. 25, 2022)).

Here, JG Law expressly waived its right to challenge the adequacy of Defendants' search. In a March 3, 2025 Joint Status Report signed by both counsel, the parties told the Court that "Plaintiff has informed Defendants that it does not need any additional document productions" beyond what was already provided, and that "Plaintiff has narrowed its challenge in this lawsuit to the withholdings on thirty pages of records that Plaintiff, through counsel, identified in an email to Defendant's counsel." ECF No. 50. Thus, that report memorialized what JG Law's counsel had told Defendants' counsel in the weeks prior: that it was "not interested in additional FOIA disclosures." ECF No. 58-1. On top of all that, JG Law confirmed its waiver through its subsequent conduct. Defendants sent JG Law a draft declaration and a *Vaughn* index in the months following, and JG Law did not take issue with Defendants' search in either of the two subsequent joint reports filed with the Court. *See* ECF Nos. 51, 52.

For its part, JG Law "does not deny" that it agreed to narrow the issues in this case. *See* ECF No. 60 at 1. But it argues that its statements did not waive its right to challenge the adequacy of Defendants' search because it was not set out in a "formal agreement." *Id.* Problem is, that is

not the standard for a waiver.  JG Law also points to a case in which a court declined to find a

waiver when the FOIA plaintiff there "fail[ed] to include Count One" in its status report.  *Cayuga*

*Nation*, 2022 WL 888178, at *3.  But the status report in *Cayuga* merely omitted an item; it "[did]

*not* explicitly waive plaintiff's contentions."  *Id.* (emphasis added).  Indeed, the *Cayuga* Court

pointed out that its decision rested on the *absence* of an "express statement that would serve as the

basis for finding a waiver."  *Id.*  Here, such an express statement exists in the form of the March

3, 2025 Joint Status Report signed by both counsel.  *See* ECF No. 50.  JG Law cannot take back

its waiver now.

> **B.**      **Defendants' Withholdings Were Proper Under FOIA Exemptions 7(E) and 3**

The adequacy of the search aside, the parties disagree only about whether Defendants'

*Vaughn* index was sufficiently detailed and on segregability with respect to the material withheld

under Exemption 3.  *Compare* ECF No. 56 at 5 *with* ECF No. 58 at 4–5.  But before the Court

reaches those issues, it must first determine whether Defendants' withholdings fall within a FOIA

exemption in the first place.  In other words, even though JG Law does not challenge whether the

material was properly withheld under FOIA Exemptions 7(E) and 3 in its cross-motion, the Court

must still determine for itself whether the withholdings were appropriate and whether summary

judgment on these issues is warranted.[2]  *See* Fed. R. Civ. P. 56(e)(3).  "FOIA requires federal

agencies to make records publicly available upon request unless one of nine exemptions applies."

*Emuwa v. DHS*, 113 F.4th 1009, 1012 (D.C. Cir. 2024).  It creates a "strong presumption in favor

---

[2] In its cross-motion, JG Law says that Defendants "[m]isapplied Exemption 3," which
seems, at first glance, to challenge whether withholding certain material under that exemption was
proper.  ECF No. 56 at 4–5.  But upon closer inspection, JG Law merely objects to the fact that
certain records were not found in Defendants' search—and thus never produced.  JG Law argues
that Exemption 3 "does not automatically extend to *investigative or law enforcement reports* gen-
erated by other agencies that may have informed a U.S. consular officer's decision."  *Id.* at 2–4
(emphasis added).  But Defendants do not claim to have applied Exemption 3 to any such records.
And, as explained above, JG Law has waived any challenge to the scope of Defendants' search.

of disclosure" and "places the burden on the agency to justify the withholding of any requested documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). Defendants have met their burden with respect to both exemptions.

### 1.   Exemption 7(E) Covers Law Enforcement Database Codes

Defendants withheld a portion of one page under Exemption 7(E). Exemption 7(E) permits an agency to withhold "records or information compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The D.C. Circuit has recognized that despite the requirement that FOIA exemptions "must be narrowly construed," Exemption 7(E) "is written in broad and general terms," and such "broad language— even when construed narrowly"—sweeps broadly. *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193–94 (D.C. Cir. 2009).

Jarrod Panter, Chief FOIA Officer for USCIS, asserts in a declaration that the partial page withheld under Exemption 7(E) contains "law enforcement database codes" that, if made public, would result in "the nullification of the specific codes" within agency operations moving forward because they would no longer be secret. ECF No. 55-2 ¶¶ 20–21. The Court agrees that such law enforcement database codes either themselves constitute "techniques and procedures for law enforcement" or could serve as "guidelines" that, if disclosed, "could reasonably be expected to risk circumvention of the law." § 552(b)(7)(E). Especially without a reason to think otherwise, Defendants' withholding under Exemption 7(E) is proper.

### 2.   Exemption 3—Via Section 222(f) of the INA—Covers Records Pertaining to the Adjudication of Hawitt's Visa Applications

Defendants also withheld 22 pages under Exemption 3 that pertain to Hawitt's visa

application.  Exemption 3 permits an agency to withhold records that are "specifically exempted from disclosure by statute . . . if that statute . . . (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue[,] or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).  Thus, after a separate statute is identified as the basis for withholding, the agency must show two things: (1) "that the statute claimed is one of [the] exemption[s] as contemplated by Exemption 3"; and (2) "that the withheld material falls within the statute."  *Larson v. U.S. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009).

As their statutory basis for withholding under Exemption 3, Defendants point to section 222(f) of the Immigration and Nationality Act, codified at 8 U.S.C. § 1202(f).  *See* ECF No. 55 at 7–10.  The D.C. Circuit has held that "section 222(f) qualifies as an Exemption 3 statute."  *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 740–41 (D.C. Cir. 1983).  Moreover, under section 222(f), "[t]he records . . . pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential."  This includes all "information revealing the thought-processes of those who rule on [a visa] application."  *Medina-Hincapie*, 700 F.2d at 744.  So the scope of what can be withheld "is not limited to information contained in a visa application," but extends to any information "that would expose the inner workings of the State Department [with respect] to a visa applicant."  *Id.* at 744 & n.36.

Defendants represent in their *Vaughn* index that the 22 pages of withheld records are "printouts from the Department of State's Bureau of Consular Affairs' Consular Consolidated Database" that "generally contains a record of every U.S. visa application made since 1997."  ECF No. 55-3 at 1–2.  Specifically, "[t]he documents contain information concerning the adjudication of visa applications for Emil Mahfuz Hawitt Medrano, including consular comments, application

7

data, and other pertinent data." *Id.* at 2. These documents relating to the adjudication of Hawitt's visa applications—housed in a specific database for such material—fall within the heartland of section 222(f), which broadly sweeps in all "records . . . pertaining to the issuance or refusal of visas." 8 U.S.C. § 1202(f). Thus, the Court finds that Defendants' withholding of these 22 pages under Exemption 3 is proper.[3]

JG Law also objects that Defendants have not "provide[d] sufficient detail" in their *Vaughn* index for these records. *See* ECF No. 56 at 4. But it is hard to know what more Defendants could have provided without revealing confidential information covered by section 222(f). It is true that when withholding records, an agency cannot get by with a "sweeping and conclusory citation of an exemption" and instead "must provide a relatively detailed justification" for its withholding. *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). This requirement is to make up for "the lack of access of the party seeking disclosure" and place the "adversarial" parties on a more level playing field. *Id.* at 250. But the *Vaughn* index filed by

---

[3] As described above, JG Law's cross-motion fails to challenge whether the material at issue was properly withheld under FOIA Exemption 3. To the extent it tries to do so in its reply because the material concerns a visa *revocation* and not a visa approval or denial, *see* ECF No. 60 at 2–5, it has forfeited such an argument, because "[i]ssues may not be raised for the first time in a reply brief." *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (quoting *Rollins Env't Servs. v. EPA*, 937 F.2d 649, 652 n.2 (D.C. Cir. 1991)). At any rate, its attempt to do so is unavailing. The word "pertain" is capacious. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (explaining that the phrase "relating to"—defined as "to have bearing or concern; *to pertain*"—is "broad." (quoting *Black's Law Dictionary* 1158 (5th ed. 1979) (emphasis added))). So although visa revocations are not themselves approvals or denials, they may certainly "pertain[] to" approvals or denials, which is all that is needed. *See* § 1202(f). Such a result is sensible; reasons that supported previously revoking an individual's visa are likely to also be reasons relevant to the adjudication of any visa application he submits in the future, and thus constitute "information revealing the thought-processes of those who rule on [a visa] application." *Medina-Hincapie*, 700 F.2d at 744; *see also Soto v. U.S. Dep't of State*, No. 14-cv-604 (RDM), 2016 WL 3390667, at *3–4 (D.D.C. June 17, 2016) (holding that § 1202(f) encompasses information from visa revocations).

Defendants is far from sweeping and conclusory.  It provides some insight into the substance of the documents ("information concerning the adjudication of visa applications for [Hawitt]"), the database in which they are housed ("Consular Consolidated Database"), the document types ("ARIS Waiver Request Form" and "NIV Applicant Detail"), the authoring subagency ("Bureau of Consular Affairs"), and even the result of the adjudications ("Denied in Full").  ECF No. 55-3 at 1–2.  That is sufficiently detailed for purposes of an "adversarial . . . judicial dispute resolution." *Mead Data Cent., Inc.*, 566 F.2d at 250.

### C.    Defendants Released All Segregable Portions of Responsive Records

Finally, FOIA requires that an agency provide "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt," 5 U.S.C. § 552(b), "unless the exempt portions are 'inextricably intertwined with exempt portions.'"  *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data Cent., Inc.*, 566 F.2d at 260).  To satisfy its segregability burden, an agency must provide a "detailed justification" for the non-segregability of the withheld information, although not "so much detail that the exempt material would be effectively disclosed."  *Id.*  "[A]gencies are entitled to a presumption that they complied with their obligation to disclose 'any reasonably segregable portion of a record.'"  *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007) (quoting 5 U.S.C. § 552(b)).  So agencies can meet their burden by providing a sufficiently detailed *Vaughn* index alongside "the agency's declaration that it released all segregable material."  *Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008).

Upon review of the Panter Declaration, ECF No. 55-2, as well as Defendants' detailed *Vaughn* index, ECF No. 55-3, the Court finds that Defendants provided all reasonably segregable portions of withheld records.  For the partial page withheld under Exemption 7(E), USCIS attests that "no further segregation of meaningful information . . . would be possible without disclosing

information that warrants protection under the law." ECF No. 55-2 ¶ 21. And for the 22 pages

withheld under Exemption 3, "[t]he Department [of State] conducted a line-by-line review of the

documents and determined that there is no meaningful, non-exempt information that could be rea-

sonably segregated and released." ECF No. 55-3 at 2. JG Law provides the Court no reason to

question Defendants' declarations. It cursorily argues that Defendants have not "demonstrate[d]

with 'reasonable specificity' why a document cannot be further segregated." ECF No. 56 at 5.

But JG Law provides no support for this contention, nor does it suggest what more Defendants

could have done to satisfy segregability.[4] The Court is persuaded that Defendants have met their

burden on this front.

## IV.    Conclusion

For all the above reasons, the Court will grant Defendants' motion for summary judgment,

deny JG Law's cross-motion, and enter judgment for Defendants. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 19, 2026

---

[4] JG Law also argues in its reply that Defendants have not properly segregated non-exempt information because all the withheld records are not covered by Exemption 3. ECF No. 60 at 5. In doing so, JG Law confuses segregability with the applicability of that exemption. And, for reasons already explained, JG Law forfeited this otherwise meritless argument by not raising it until its reply.